## FARAH *v.* SACHS.

1. COURTS—SUPERINTENDING CONTROL—MUNICIPAL CORPORATIONS—ZONING.

    Circuit court reviews orders of municipal boards of zoning appeals in the exercise of its power of superintending control (CLS 1961, § 600.15; GCR 1963, 711).

2. APPEAL AND ERROR—MUNICIPAL CORPORATIONS—COURTS—ZONING.

    Circuit courts may not hear additional testimony on the propriety of the action of boards of zoning appeals in review of an order made by such a board since review is on the record made before the board.

3. MUNICIPAL CORPORATIONS—ZONING—VARIANCES—HARDSHIP.

    State zoning enabling act and city ordinance empower municipal boards of zoning appeals to grant use variances on grounds of unnecessary hardship or practical difficulty (CLS 1961, § 125.585; Detroit Ordinance No 171-D, § 20.7).

4. SAME—ZONING—VARIANCES—FINDING.

    A city board of zoning appeals must state the findings of facts upon which it justifies the granting of a use variance based on unnecessary hardship or practical difficulty.

5. SAME—ZONING—VARIANCES.

    A use variance may not be granted to a property owner by a board of zoning appeals unless the board can find, on the basis of substantial evidence, that the property cannot reasonably be used in a manner consistent with existing zoning.

---

REFERENCES FOR POINTS IN **HEADNOTES**

[1]  58 Am Jur, Zoning § 229 *et seq.*
[2]  58 Am Jur, Zoning § 258.
[3, 13]  58 Am Jur, Zoning § 196.
[4]  58 Am Jur, Zoning § 225.
[5]  58 Am Jur, Zoning § 198 *et seq.*
[6, 7]  58 Am Jur, Zoning § 199.
[8–12]  58 Am Jur, Zoning §§ 203, **204.**

6. SAME—ZONING—VARIANCES—HARDSHIP—PUBLIC INTEREST.

Unnecessary *hardship*, which supports the granting of a use variance, under State zoning enabling act and city ordinance refers to hardship suffered by the property directly, and not by others, even though the need for the proposed nonconforming use in the community would be relevant on the issue whether variance is contrary to the public interest (CLS 1961, § 125.585; Detroit Ordinance No 171-D, § 20.7).

7. SAME—ZONING—VARIANCES—HARDSHIP—PUBLIC CONVENIENCE.

Convenience or inconvenience to the general public is not a ground for the grant or denial of a hardship variance from municipal zoning ordinances.

8. SAME—ZONING—VARIANCES—PRACTICAL DIFFICULTY.

Granting a use variance to permit construction of a 12-story, 130-unit apartment building in a district zoned for 50-foot high, multiple dwellings by a city board of zoning appeals *held*, not justified on ground of practical difficulty, where there was no claim or finding of practical difficulty arising out of the area or configuration of the land in relation to a contemplated, permitted use (CLS 1961, § 125.585; Detroit Zoning Ordinance No 171-D, § 20.7, as amended to February 1, 1963).

9. SAME—ZONING—VARIANCES—HARDSHIP—NECESSITY.

Granting a use variance to permit construction of a 12-story, 130-unit apartment building in a district zoned for 50-foot high, multiple dwellings by a city board of zoning appeals *held*, unauthorized, where the board substituted its own judgment in place of the necessity of finding either unnecessary hardship or practical difficulty under authority of city ordinance (Detroit Ordinance No 171-D, § 20.7, as amended to February 1, 1963).

10. SAME—ZONING—VARIANCE.

A variance may not be granted to a property owner by a board of zoning appeals unless the board can find, on the basis of substantial evidence, either unnecessary hardship or practical difficulty.

11. SAME — ZONING — VARIANCES — AUTHORITY — HARDSHIP — NECESSITY.

City board of zoning appeals does not have sweeping discretionary authority under city zoning ordinance to modify zoning ordinance merely because such modification is not contrary to public interest, is within the spirit of the ordinance, and

will effect substantial justice, but is limited to grant use vari-
ances only upon proof of unnecessary hardship or practical
difficulties (Detroit Ordinance No 171-D, § 20.7).

12. SAME — ZONING — VARIANCES — AUTHORITY OF ZONING APPEALS
    BOARD.
       Board of zoning appeals, being without legislative power, may
       not in the guise of a use variance amend a zoning ordinance
       or disregard its provisions (Detroit Ordinance No 171-D,
       § 20.7).

13. SAME — ZONING — VARIANCES — AUTHORITY OF BOARD OF ZONING
    APPEALS.
       Granting a use variance to permit construction of a 12-story,
       130-unit apartment building in a district zoned for 50-foot
       high, multiple dwellings by a city board of zoning appeals
       under city zoning ordinance *held*, beyond board's power in
       the absence of any finding of unnecessary hardship or practical
       difficulty, the relief sought by property owner to be
       obtained, if at all, from the legislative body itself, the city
       council (Detroit Ordinance No 171-D, § 20.7, as amended to
       February 1, 1963).

Appeal from Wayne; Weideman (Carl M.), J.
Submitted Division 1 November 8, 1967, at Detroit.
(Docket No. 2,787.)    Decided March 25, 1968.

Complaint by Hal Farah and Emmaline Farah,
his wife, and Martha Hicks against Melvin W. Sachs
seeking an order nullifying a zoning variance grant-
ed to defendant Sachs by the Board of Zoning Ap-
peals of the City of Detroit.   Judgment for defend-
ant.   Plaintiff appeals.   Reversed.

*Kenneth M. Davies*, for plaintiff.

*I. R. Starr*, for defendant.

LEVIN, P. J.   The plaintiffs filed a complaint with
the circuit court claiming, among other things, that
the Detroit board of zoning appeals erred in grant-

ing a variance to permit the construction of a high-rise apartment building in an RM4 zone. The defendant denied the material allegations of the complaint and moved for summary judgment asserting, with supporting affidavit of his attorney, that only issues of law were presented. The plaintiffs filed an answering affidavit stating they had been denied a fair and complete hearing before the zoning appeals board, that defendant's proposed structure would constitute an "inconsistent use", and that a hearing was required in order to establish the inconsistency of the proposed development with existing uses in the zoning district.

Following submission of briefs and oral argument, the trial judge entered an order granting defendant's motion for summary judgment.

The circuit court reviews an order of the board of zoning appeals in the exercise of its power of superintending control.[1] The review is of the record made before the board of zoning appeals and, thus, the circuit judge could not have heard additional testimony on the propriety of the board's action. *Lorland Civic Association* v. *DiMatteo* (1968), 10 Mich App 129.

The board of zoning appeals' order granted permission to erect a 12-story, 130-unit apartment building with mechanical penthouse in an RM4 district, "notwithstanding deficient lot area per room, excessive height, and all parking not in rear yard". Some permitted uses in RM4 districts are hotels (subject to certain conditions), private clubs, educational or philanthropic institutions, public utility buildings, community garages and motels (subject to approval of the city plan commission), hospitals, medical or dental offices, multiple dwellings, homes

---

[1] GCR 1963, 711; revised judicature act, PA 1961, No 236, § 615 (CLS 1961, § 600.615 [Stat Ann 1962 Rev § 27A.615]).

and schools for children, rooming houses, 2-family dwellings and single-family dwellings. No structure in an RM4 district may exceed a height of 50 feet, *i.e.*, approximately 5 stories.[2]

The property is located on Bethune avenue between Second boulevard and Third avenue in Detroit, Michigan.

The board's order contains the following statements:

The property has a frontage of 245 feet on Bethune and is 125 feet deep.

The structure will abut a parking lot on the east.

The structure will be located diagonally across the street from a parking lot used in connection with a building located on Second boulevard and Bethune avenue.

There are other high-rise structures in the area used for residential and commercial purposes, such as the IBM building, the New Center building, the Fisher building, the Abington, and the new Howard Johnson hotel under construction.

Bethune and Second are highly travelled streets.

There is a need for a structure and use of this kind in this area to provide housing with off-street parking facilities for people who are employed in the New Center area.

A representative of the city plan commission reported to the board that this proposal had been submitted to the staff for examination and suggestions. He further reported the staff has considered a rezoning in the area, and has tailored 2 zoning districts, called "special development districts", to handle the probable future development in this area. It is the staff's opinion that this area will develop with high-rise multiple dwellings and low-rise office and service-type uses.

The board found that the proposed structure and use would not have an injurious or harmful effect

---

[2] Detroit Ordinance No 171-D, § 8, as amended to June 10, 1965.

on the contiguous property, would not be detrimental to the surrounding neighborhood and would not depreciate property values, but would rather increase the property values in this area.

The board therefore "in accord with its rules of procedure and in order that the spirit, intent, and purpose of the zoning ordinance shall be observed and substantial justice done, resolved" to grant the requested variance.

The governing zoning enabling act and the Detroit ordinance[3] empower the board to grant a variance on the grounds of unnecessary hardship or practical difficulties. The board's order does not, even in conclusionary language, state that it found either unnecessary hardship or practical difficulty. Had the board's order stated such conclusions, the order would still be deficient for lack of any finding of fact to support a variance based on unnecessary hardship or practical difficulty. *Tireman-Joy-Chicago Improvement Association* v. *Chernick* (1960), 361 Mich 211, 219.

In *Puritan-Greenfield Improvement Association* v. *Leo* (1967), 7 Mich App 659, we held that a use variance should not be granted unless the board of zoning appeals can find, on the basis of substantial evidence, that the property cannot reasonably be used in a manner consistent with existing zoning.

None of the board's declarations in its order concern any difficulty that might be encountered in using the property in a manner consistent with its present zoning. The property is presently used for low-rise residential purposes. As previously set forth, the property might, among the potential uses consistent with present zoning, be developed with multiple residential dwellings not exceeding 50 feet

---

3 PA 1921, No 207 (CLS 1961, § 124.585 ([Stat Ann 1958 Rev § 5.2935]); Detroit Ordinance No 171-D, § 20.7, as amended to February 1, 1963; Detroit City Code §§ 2.7.98, 2.7.100.

in height. It does not appear that the property for which the variance was granted could not reasonably be used as presently zoned.

The board found there was a need for the proposed structure in the neighborhood. However, the hardship referred to in the enabling act and the ordinance is a hardship suffered by the property directly, and not by others. The need for the proposed nonconforming use in the community would be relevant on the issue whether the proposed variance is "contrary to the public interest" (Detroit Ordinance No 171-D, § 20.7); it would not establish hardship affecting the property for which the variance is sought.

"Needless to state, convenience or inconvenience to the general public is not a ground for the grant or denial of a hardship variance." 8 McQuillin, Municipal Corporations (3d ed rev 1965) § 2.5.168, pp 562, 563.

Accord: 2 Rathkopf, The Law of Zoning and Planning (3d ed), p 45–18; Green, The Power of the Zoning Board of Adjustment to Grant Variances from the Zoning Ordinance, 29 NC L Rev, 245, 249, 250 (1951).

Nor is there any claim or finding of practical difficulty arising out of the area or configuration of the land, in relation to a contemplated, permitted use, which would justify an adjustment in the structure's permitted height, let alone an adjustment of the magnitude authorized here.

Apparently, the board proceeded on the assumption that it had the power to grant such a sweeping departure from existing zoning merely because, in its judgment, the proposed use would be a sensible one—an evaluation we do not question, and one finding support among staff members of the city plan commission—and because, again in its judgment,

the grant would be within the "spirit, intent, and purpose of the zoning ordinance" and would accomplish "substantial justice". Clearly the board misread its authority. The relevant provision of the ordinance reads as follows:

"Where owing to special conditions a literal enforcement of the provisions of this ordinance will result in unnecessary hardship or involve practical difficulties, the board shall have power upon appeal in specific cases to authorize such variance or modification of the terms of this ordinance as will not be contrary to the public interest and so that the spirit of this ordinance shall be observed, public safety secured and substantial justice done." Detroit Ordinance No 171-D, § 20.7.

Here the board completely ignored the necessity of finding either unnecessary hardship or practical difficulty and entered its order as if such findings were not a precondition to the exercise of its variance-granting authority, indeed, as if the foregoing grant of authority began with the words "the board shall have power" and there was no preceding language limiting its authority. However, the board may not grant a variance unless it can find, on the basis of substantial evidence, either unnecessary hardship or practical difficulty. The board does not have sweeping discretionary authority to make modifications in the terms of the ordinance merely because the modifications are not contrary to the public interest, are within the spirit of the ordinance, and will effect substantial justice; we doubt that grant of such authority totally uncontrolled by any meaningful standard, would be valid.[4]

_____

[4] The delegation of authority to grant variances upon proof of unnecessary hardship or practical difficulties has been challenged for vagueness, but most courts have approved delegation in such terms. *Tireman-Joy-Chicago Improvement Association* v. *Chernick*, *supra*, p 217. Compare *Osius* v. *City of St. Clair Shores* (1956), 344 Mich 693, concerning an exception as distinguished from a variance.

In this case the board, having concluded that the area's existing zoning was outdated, chose to grant particular property owners what amounts to nothing less than a change in the zoning itself. The board, being without legislative power, may not in the guise of a variance amend the zoning ordinance or disregard its provisions.[5]

Defendant's reliance on *Mitchell* v. *Grewal* (1953), 338 Mich 81, is misplaced. In that case the defendant obtained an exception, not a variance. The distinction between a variance and an exception is fully discussed in that opinion. The defendant here can point to no provision of the zoning ordinance authorizing the board of zoning appeals to allow an exception of the kind granted.

The relief sought here must be obtained, if at all, from the legislative body itself, the common council of the city of Detroit. Entrance of the order was beyond the board's power.

Reversed. Costs to appellant.

J. H. GILLIS and QUINN, JJ., concurred.

---

[5] 2 Yokley, Zoning Law and Practice (3d ed), § 15–13; 2 Rathkopf, The Law of Zoning and Planning, ch 39, § 1. See, also, 1 Antieau, Municipal Corporation Law, § 7.58, p 490.40.